Matter of BTG Pactual NY Corp. v New York State Tax Appeals Trib. (2022 NY Slip Op 01490)





Matter of BTG Pactual NY Corp. v New York State Tax Appeals Trib.


2022 NY Slip Op 01490


Decided on March 10, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 10, 2022

531667
[*1]In the Matter of BTG Pactual NY Corp., Petitioner,
v
New York State Tax Appeals Tribunal et al., Respondents.

Calendar Date:January 11, 2022

Before:Garry, P.J., Lynch, Pritzker, Colangelo and Ceresia, JJ.

McDermott Will & Emery LLP, New York City (Kathleen Quinn of counsel) and Jones Walker LLP, New York City (Alysse McLoughlin of counsel), for petitioner.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for Commissioner of Taxation and Finance, respondent.



Colangelo, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal denying petitioner's request for a refund of corporate franchise tax imposed under Tax Law article 9-A.
Petitioner is a multinational company incorporated under the laws of New York and the sole member of BTG Pactual US Capital LLC (hereinafter US BD) and BTG Pactual Asset Management US LLC (hereinafter US AM), entities known as a single member limited liability company (hereinafter SMLLC). US BD is registered as a broker-dealer with the Securities and Exchange Commission (hereinafter SEC) and the Financial Industry Regulatory Authority (hereinafter FINRA). US AM is registered with the SEC as an investment advisor. Neither petitioner nor US AM is a registered broker-dealer with the SEC or FINRA and neither petitioner nor US BD is a registered investment advisor with the SEC. For purposes of the SEC and FINRA, petitioner, US BD and US AM are separate legal entities. For federal corporate income tax purposes and state corporate franchise tax purposes (see Tax Law art 9-A), US BD and US AM are treated as disregarded entities.[FN1] SMLLCs that are disregarded entities do not file separate federal corporate income tax returns or separate state corporate franchise tax returns.
As relevant here, petitioner filed federal corporate income tax returns and state corporate franchise tax returns for tax years 2012 and 2013. Because US BD and US AM were disregarded entities, petitioner's federal corporate income tax returns and state corporate franchise returns included the income, receipts, assets and activities of these entities along with its own. On its originally filed state corporate franchise tax returns, petitioner computed its state corporate franchise tax liability by sourcing US BD's receipts using the registered broker-dealer sourcing rules of Tax Law former § 210 (3) (a) (9) and by sourcing US AM's receipts based upon where its services were performed (known as customer-based sourcing rules) pursuant to Tax Law former § 210 (3) (a) (2) (b). This resulted in a tax liability to petitioner of $7,460,464. Petitioner thereafter amended its state corporate franchise tax returns for the periods at issue, modifying the receipts factor of the business allocation percentage (hereinafter BAP)[FN2] by sourcing US AM's receipts using the broker-dealer sourcing rules of Tax Law former § 210 (3) (a) (9). The reporting of US AM's receipts using the broker-dealer sourcing rules would generate a refund of $7,427,340 to petitioner — nearly the entire state corporate franchise tax amount. An audit ensued, and the refund was ultimately denied.
In March 2016, prior to the completion of the audit, petitioner filed a petition with the Division of Tax Appeals seeking a refund based upon its amended returns. The matter proceeded to an evidentiary hearing before an Administrative Law Judge (hereinafter ALJ), who [*2]denied the petition and sustained the Division's denial of petitioner's claim for a refund. Petitioner filed exceptions and respondent Tax Appeals Tribunal denied the exceptions and affirmed the ALJ's determination, thereby sustaining the denial of petitioner's claim for a refund. In doing so, the Tribunal rejected petitioner's federal conformity argument. Petitioner then commenced this CPLR article 78 proceeding challenging the Tribunal's determination, and we now confirm.
Petitioner argues that the Tribunal erred in denying its request for a corporate franchise tax refund on the basis that it was not entitled to use broker-dealer sourcing rules for US AM's receipts. According to petitioner, Tax Law former § 210 (3) (a) (9) unambiguously provides that broker-dealer rules apply to a "taxpayer which is a registered broker or dealer" and that petitioner, as well as US AM and US BD, as disregarded entities, are collectively one "taxpayer" for corporate franchise tax purposes.
"[Judicial] review of a determination of the Tribunal is limited. If the determination is rationally based upon and supported by substantial evidence[, it] must be confirmed, even if a different conclusion is reasonable" (Matter of American Food & Vending Corp. v New York State Tax Appeals Trib., 144 AD3d 1227, 1228 [2016] [internal quotation marks and citations omitted]; see Matter of Gans v New York State Tax Appeals Trib., 194 AD3d 1209, 1210 [2021]). Therefore, "the issue is whether the Tribunal's determination has a rational basis, not whether [the] petitioner's alternative interpretation of the statute is reasonable" (Matter of Suozzi v Tax Appeals Trib. of the State of N.Y., 179 AD3d 1253, 1255 [2020]). We are mindful that "[s]tatutes are to be construed according to the ordinary meaning of their words" and in accord with their legislative intent (Matter of Morris Bldrs., LP v Empire Zone Designation Bd., 95 AD3d 1381, 1383 [2012] [internal quotation marks and citations omitted], affd 21 NY3d 233 [2013]).
Kathy Malone, a former staff accountant with the SEC and former compliance examiner with FINRA who is qualified as an expert in broker-dealer compliance and regulatory matters, testified at the hearing that the broker-dealer and investment advisor entities exist for different reasons and perform different services. Specifically, Malone testified that "[a] broker-dealer is someone or a firm that buys or sells or distributes securities products in the [United States]," whereas an investment advisor "provid[es] investment advice or make[s] recommendations on securities products." Because these provide different services, each earns fees that the other cannot earn. Also, the regulatory burden by the SEC and FINRA upon broker-dealers is considered to be more onerous; broker-dealers are required to adhere to certain licensing, record-keeping and minimum net capital requirements that do not bind investment advisors. If an investment advisor "wants to perform broker[*3]-dealer activities," it has "to register as a broker-dealer." By the same token, an investment advisor has its own rules that do not apply to a broker-dealer. Malone added that it is common for businesses to maintain broker-dealers and investment advisors as separate legal entities because broker-dealers are subject to more stringent licensing and minimum capital and reporting requirements.
The state corporate franchise tax owed by a corporate taxpayer is calculated based upon the portion of that corporation's income that is allocated to New York under the BAP. The BAP determines the portion of the corporation's income attributable to its activities in New York compared to its worldwide business activities. During the years at issue here, petitioner's BAP was calculated by dividing the corporation's New York receipts by its total business receipts (see Tax Law former § 210 [3]). An important component of that calculation involves determining the location of the source of the corporation's receipts — whether in or outside New York. During the tax years at issue, most taxpayer receipts were "sourced" based upon where the services by the taxpayer were considered performed (see Tax Law former § 210 [3] [a] [2] [b]). However, New York adopted a rule to assist the broker-dealer industry that permits broker-dealers to use "customer-based" sourcing — allowing their receipts to be sourced to the state where the customer's mailing address is located (see Tax Law former § 210 [3] [a] [9]). The salutary effect of this rule is to exclude a significant amount of a broker-dealer's receipts from the New York corporate franchise tax given the fact that broker-dealers located in New York perform many of their services — particularly the "execution of securities or commodities purchase or sales orders" — in New York for customers located outside of the state or country (see Tax Law former § 210 [3] [a] [9] [i]).
Petitioner based its entitlement to a refund on the election it made that its component parts, US BD and US AM, would not be treated as separate entities for federal income tax purposes, but rather as disregarded entities as permitted by the applicable federal regulations (see 26 CFR 301.7701-3 [a]). Thus, for federal income tax purposes, the revenue of the disregarded entities, as well as petitioner's revenue, are treated as one taxpayer — the so called "check-the-box" method (see 26 CFR 301.7701-3 [a]; 301.7701-2 [a]).
The ALJ denied petitioner's refund application stating that "US BD's status as a registered broker-dealer cannot carry over to the non-broker-dealer receipts earned by US AM," and the mere fact that US AM was treated as a disregarded entity for federal tax purposes "[did] not dictate whether US AM's receipts are broker-dealer receipts for purposes of sourcing receipts within and without New York." The ALJ determined that Tax Law former § 210 (3) (a) (9) unambiguously provides that broker-dealer customer-based sourcing rules apply [*4]only to taxpayers that are regulated broker-dealers such as US BD, noting that the statute gave "no indication that customer-based sourcing rules were to apply to non-broker-dealer affiliates such as US AM." The ALJ further held that "[h]ad the Legislature intended for customer-based sourcing rules to apply to the financial services industry as a whole, as petitioner asserts, it would have provided for such language in the statute." The Tribunal agreed.
We find that, in construing the statutory text of Tax Law former § 210 (3) (a) (9) according to the ordinary meaning of its terms and in accord with the legislative intent, no other conclusion is reasonable. The statute is unambiguous in its sole application "[i]n the case of a taxpayer which is a registered securities or commodities broker or dealer" and makes clear that a registered securities or commodities broker or dealer means "a broker or dealer registered as such by the [SEC] or the commodities futures trading commission" (Tax Law former § 210 [3] [a] [2] [B]; [9] [B]). The statute goes on to enumerate the types of receipts that only registered broker-dealers can earn (Tax Law former § 210 [3] [a] [9] [A] [i]-[vii]). "To this end, the statutory text provides the clearest indication of legislative intent, and should be construed 'to give effect to its plain meaning'" (Matter of United Parcel Serv., Inc. v Tax Appeals Trib. of the State of N.Y., 98 AD3d 796, 797 [2012], lv denied 20 NY3d 860 [2013], quoting Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]; see Matter of Golub v New York State Tax Appeals Trib., 116 AD3d 1261, 1263 [2014]). Since neither petitioner nor US AM is a registered broker-dealer, petitioner is not entitled to use the statute's customer-based sourcing rules for US AM's receipts.[FN3]
Contrary to petitioner's contention, we are unpersuaded that the doctrine of federal conformity requires a different conclusion. "Pursuant to the doctrine of federal conformity, courts [should] adopt, whenever reasonable and practical, the [f]ederal construction of substantially similar tax provisions, particularly where the state statute is modeled on [the] federal law" (Matter of Astoria Fin. Corp. v Tax Appeals Trib. of State of N.Y., 63 AD3d 1316, 1319 [2019] [internal quotation marks and citations omitted]). However, such "modeling" is manifestly absent here. Indeed, federal tax law has no counterpart to New York's receipt sourcing rules, and petitioner has not identified any substantially similar provision. As Tax Law former § 210 (3) (a) (9) unambiguously limits its unique provision of customer-based receipt sourcing to registered broker-dealers for which there is no federal counterpart and "the [s]tate tax laws specifically expressly diverge from the [f]ederal tax laws, there is no requirement that the court strain to read them as identical" (Matter of CoData Corp. v Commissioner of Taxation & Fin., 163 AD2d 755, 756 [1990]). Petitioner chose to structure [*5]US BD and US AM as separate legal entities from itself and from each other and it is bound by the tax consequences of that choice of corporate form (see Matter of CS Integrated, LLC v Tax Appeals Trib. of State of N.Y., 19 AD3d 886, 889 [2005]). We therefore find that the Tribunal's determination is rationally based and supported by substantial evidence. We have reviewed petitioner's remaining contentions and find them to be without merit.
Garry, P.J., Lynch, Pritzker and Ceresia, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: Pursuant to the Internal Revenue Code regulations, known as "check-the-box regulations," an SMLLC "can elect to be . . . disregarded as an entity separate from its owner" (26 CFR 301.7701-3 [a]). The federal check-the-box regulations specifically provide that if an entity makes an election to be disregarded, "its activities are treated in the same manner as a . . . branch or division of the owner" (26 CFR 301.7701-2 [a]).

Footnote 2: During the tax years at issue, the investment and business components of the corporate taxpayer's income were allocated to New York based on the taxpayer's investment and business allocation percentages (Tax Law former § 210 [3]). A corporation's BAP was computed by dividing the corporation's New York business receipts by its total business receipts (see Tax Law former § 210.3 [a] [10]). The proper calculation of petitioner's BAP forms the basis of petitioner's protest of the denial of its refund claim by the Division of Tax Appeals.

Footnote 3: Significantly, as the ALJ noted, the Legislature amended the Tax Law in 2015 to extend customer sourcing rules to entities such as US AM. Such amendment lends further support to the Tribunal's position that during the time period at issue here, Tax Law former § 210 (3) (a) (9) was intended to apply only to bona fide registered broker-dealers such as US BD, and not to investment advisors such as US AM.