Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y. (2022 NY Slip Op 05898)

Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y.

2022 NY Slip Op 05898

Decided on October 20, 2022

Appellate Division, Third Department

Fisher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 20, 2022

532479

[*1]In the Matter of Walt Disney Company and Consolidated Subsidiaries, Petitioner,
v
Tax Appeals Tribunal of the State of New York et al., Respondents.

Calendar Date:September 13, 2022

Before: Garry, P.J., Egan Jr., Clark, Fisher and McShan, JJ.

Pillsbury Winthrop Shaw Pittman LLP, New York City (Marc A. Simonetti of counsel), for petitioner.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for Commissioner of Taxation and Finance, respondent.

Fisher, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a notice of deficiency of corporate franchise tax imposed under Tax Law article 9-A.
Petitioner is a corporation organized under the laws of Delaware and is the parent company to an affiliated group of entities, which are part of petitioner's combined group in its tax filings, that are in the business of producing and licensing to others content and other media, entertainment and consumer products. During the tax years ending in 2008 through 2010 (hereinafter the audit period), petitioner, through its subsidiaries, licensed intellectual property to affiliates organized under the law of foreign countries through various licensing agreements in exchange for royalty payments. Petitioner deducted royalty payments received from its foreign affiliates for the audit period under Tax Law § 208 (former [9] [o]).
In April 2017, after an audit, the Department of Taxation and Finance disallowed the royalty deductions and issued petitioner a notice of deficiency stating that petitioner owed additional corporate franchise tax plus interest for the audit period. Petitioner sought review with the Division of Tax Appeals and, following a hearing, an Administrative Law Judge (hereinafter ALJ) sustained the notice of deficiency, concluding that the Department properly determined that petitioner was required to add the royalty payments back into its income. Respondent filed an exception with respondent Tax Appeals Tribunal, which affirmed the ALJ's determination. Petitioner commenced this proceeding in this Court to challenge the Tribunal's determination.
Petitioner argues that it has the right to deduct royalty payments under the plain meaning of the statute. According to petitioner, Tax Law § 208 (former [9] [o]) unambiguously allowed a taxpayer to exclude royalty payments received from a related member unless one of three conditions were met — none of which apply here. Petitioner asserts that, because the definition of "related member" does not require such entity to be a taxpayer, petitioner was entitled to deduct royalty payments as income from its foreign affiliates. Petitioner further contends that respondents created a new exception not provided for in the statute by holding that petitioner would only be entitled to the exclusion if the foreign affiliates were New York taxpayers, thereby discriminating against out-of-state commerce and violating the dormant Commerce Clause of the US Constitution.
"Judicial review of a determination of the Tribunal is limited. If the determination is rationally based upon and supported by substantial evidence, it must be confirmed, even if a different conclusion is reasonable" (Matter of BTG Pactual NY Corp. v New York State Tax Appeals Trib., 203 AD3d 1347, 1348-1349 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see Matter of Black [*2]v New York State Tax Appeals Trib., 206 AD3d 1482, 1484 [3d Dept 2022]). "Interpretation given a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference, so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute" (Matter of Obus v New York State Tax Appeals Trib., 206 AD3d 1511, 1512 [3d Dept 2022] [internal quotation marks and citations omitted]).
"Ultimately, however, legal interpretation is the court's responsibility; where the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretation is therefore to be accorded much less weight" (Matter of Carmel Academy v New York State Educ. Dept., 169 AD3d 1287, 1288 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 901 [2020]; accord Matter of Obus v New York State Tax Appeals Trib., 206 AD3d at 1512).
The taxpayer bears the burden "to overcome a tax assessment and establish its unambiguous entitlement to an exclusion," exemption or deduction (Matter of XO Communications Servs., LLC v Tax Appeals Trib. of the State of N.Y., 182 AD3d 717, 718 [3d Dept 2020], lv denied 36 NY3d 903 [2020]). Such statutory exclusions, exemptions or deductions are to be construed "in favor of the taxing power" (Matter of Wegmans Food Mkts., Inc. v Tax Appeals Trib. of the State of N.Y., 33 NY3d 587, 592 [2019] [internal quotation marks and citation omitted]).
The statutory provision at issue contains two operative sections, one of which governs payments made from a "related member" and one of which governs payments to a "related member" (see Tax Law § 208 [former (9) (o) (2), (3)]). A related member is defined as "a person, corporation or entity, . . . whether such person, corporation or entity is a taxpayer or not, where one such person, corporation, or entity or set of related persons, corporations or entities, directly or indirectly owns or controls a controlling interest in another entity" (Tax Law § 208 [former (9) (o) (1) (A)]). A taxpayer is defined as "any corporation subject to tax under [Tax Law article 9-A]" (Tax Law § 208 [2]). Petitioner, as the entity receiving royalty payments from a "related member," is governed by Tax Law § 208 (former [9] [o] [3]), which states that,
"[f]or the purpose of computing entire net income or other taxable basis, a taxpayer shall be allowed to deduct royalty payments directly or indirectly received from a related member during the taxable year to the extent included in the taxpayer's federal taxable income unless such royalty payments would not be required to be added back under [Tax Law § 208 (former [9] [o] [2])] or other similar provision in [Tax Law chapter 60]."
Therefore, in order to determine whether an entity that receives royalty payments [*3]is entitled to deduct them from its income, an examination must be made of whether the entity that made the royalty payments is entitled to add them back under Tax Law § 208 (former [9] [o] [2]) (see Tax Law § 208 [former (9) (o) (3)]). Such provision provides that, "[f]or the purpose of computing entire net income or other applicable taxable basis, a taxpayer must add back royalty payments to a related member during the taxable year to the extent deductible in calculating federal taxable income" unless one of three conditions are met (Tax Law § 208 [former (9) (o) (2) (A), (B)]).
In enacting this statute, the Legislature indicated that it was passed to "[c]larif[y] the provisions of law which eliminate tax loopholes concerning royalty payments . . . to exclude royalty payments made to certain foreign corporation related members" (Sponsor's Mem, Bill Jacket, L 2003, ch 686). When this statute was amended in 2013 (see L 2013, ch 59, sec 1, pt E, § 2), a memorandum in support of the 2013-2014 executive budget was written, which stated that the then-current statute had been "interpreted by some taxpayers in ways that are inconsistent with the intent of the statute and the Department's interpretation" and, therefore, the amendment "would eliminate those inconsistent readings with clear language on the applicability of the required add-back . . . in order to prevent tax avoidance while allowing for fair and equitable administration."
At the hearing, the Department's employees testified that petitioner was denied the royalty deduction because the foreign affiliates it had received payments from were not New York taxpayers. The ALJ found that "[t]he addback and exclusion provisions contained in Tax Law [§ 208 former] (9) (o) work in tandem to ensure that royalty transactions between related members are taxed only once" and do "not escape taxation altogether." In determining that petitioner's interpretation of the statute effectively allowed it to avoid taxation on that income, which went against the Legislature's intent in enacting the statute, the ALJ concluded that the Department's interpretation of the statute was rational and therefore petitioner was not permitted to deduct royalty payments from its income. When the Tribunal affirmed the findings of the ALJ, it added that "the [L]egislature did not intend for a taxpayer to gain the benefit of the income exclusion . . . without the corresponding cost to a related member of the add back."
Although the question presented here "is one of pure statutory reading and analysis" and the Tribunal's interpretation of the statute is therefore given "less weight" (Matter of Obus v New York State Tax Appeals Trib., 206 AD3d at 1512 [internal quotation marks and citations omitted]), we nonetheless find that the plain meaning of the statute supports the Tribunal's interpretation. Under the statute, petitioner would be entitled to deduct royalty payments received from its foreign affiliates unless the foreign affiliates [*4]would not be required to add back the royalty payments on their own tax returns (see Tax Law § 208 [former (9) (o) (3)]). Since only taxpayers are required to add back royalty payments to their tax returns, the foreign affiliates, as nontaxpayers, would not be required to add back the payments (see Tax Law § 208 [former (9) (o) (2)]). Although petitioners argue that the definition of a related member includes nontaxpayers (see Tax Law § 208 [former (9) (o)]), this is immaterial because the operative paragraph only applies to taxpayers, who are defined as "any corporation subject to tax under this article" (Tax Law § 208 [2]). Therefore, since the foreign affiliates, as nontaxpayers, would not be required to — and simply could not — add back royalty payments on their nonexistent tax returns, petitioner is statutorily precluded from deducting the royalty payments from its income (see Tax Law § 208 [former (9) (o) (3)]). Such construction of the statutory text provides the clearest indication of the legislative intent, and is construed in a manner "to give effect to its plain meaning" (Matter of BTG Pactual NY Corp. v New York State Tax Appeals Trib., 203 AD3d at 1351 [internal quotation marks and citations omitted]; see Matter of Obus v New York State Tax Appeals Trib., 206 AD3d at 1512; Matter of Carmel Academy v New York State Educ. Dept., 169 AD3d at 1288).
Lastly, we reject petitioner's argument that Tax Law § 208 (former [9] [o]) violates the dormant Commerce Clause of the US Constitution (US Const, art I, § 8) because it favors in-state commerce and discriminates against out-of-state commerce. This provision of the US Constitution prohibits a state from "impos[ing] a tax which discriminates against interstate commerce by providing a direct commercial advantage to local business" (Westinghouse Elec. Corp. v Tully, 466 US 388, 403 [1984] [internal quotation marks, ellipsis and citations omitted]; see Matter of Zelinsky v Tax Appeals Trib. of State of N.Y., 1 NY3d 85, 90 [2003], cert denied 541 US 1009 [2004]; Hunter v Warren County Bd. of Supervisors, 21 AD3d 622, 626 [3d Dept 2005]). Unconstitutional discrimination "means differential treatment of in-state and out-of-state economic interests [whereby] . . . the differential tax treatment of two entities results solely from the situs of their activities and provides a commercial advantage to local business" (American Tel. & Tel. Co. v New York State Dept. of Taxation & Fin., 84 NY2d 31, 34-35 [1994] [internal quotation marks and citation omitted]). "[L]egislative enactments carry an exceedingly strong presumption of constitutionality, and while this presumption is rebuttable, one undertaking that task carries a heavy burden of demonstrating unconstitutionality beyond a reasonable doubt" (Matter of Frontier Ins. Co. v Town Bd. of Town of Thompson, 285 AD2d 953, 955 [3d Dept 2001] [internal quotation marks and citation omitted]; see Chavis v New York Temporary State Commn. on Lobbying, 16 AD3d 886[*5], 887 [3d Dept 2005]).
Petitioner argues that the statute discriminates against out-of-state commerce because petitioner is not permitted to deduct royalty payments received from its foreign affiliates that do not file taxes in New York, while it would be able to deduct royalty payments for any affiliates that do file New York tax returns. However, this argument neglects to realize that the reason why petitioner would be permitted to deduct such royalty payments from its income, if its affiliates were New York taxpayers, is because the affiliate would be paying taxes on that income (see Tax Law § 208 [former (9) (o) (2), (3)]). Thus, such royalty income tax would be paid by either the taxpayer or its affiliate — not both. Since similarly situated entities would also be paying taxes on the royalty income once in either scenario, whether or not such commerce is from an out-of-state source, petitioner has failed to show differential treatment between in-state and out-of-state economic interests that rises to the level of unconstitutional discrimination (see American Tel. & Tel. Co. v New York State Dept. of Taxation & Fin., 84 NY2d at 34-35; see also Matter of Frontier Ins. Co. v Town Bd. of Town of Thompson, 285 AD2d at 955). The parties' remaining contentions have been examined and found to be lacking merit or are academic.
Garry, P.J., Egan Jr., Clark and McShan, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.