Matter of Charter Communications, Inc. v New York State Tax Appeals Trib. (2025 NY Slip Op 07255)

Matter of Charter Communications, Inc. v New York State Tax Appeals Trib.

2025 NY Slip Op 07255

Decided on December 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 24, 2025

CV-24-0971
[*1]In the Matter of Charter Communications, Inc. and Combined Affiliates, Formerly Known as Time Warner Cable, Inc. and Combined Affiliates, Petitioner,
vNew York State Tax Appeals Tribunal et al., Respondents.

Calendar Date:October 9, 2025

Before:Garry, P.J., Clark, Aarons, Lynch and Powers, JJ.

Eversheds Sutherland (US) LLP, Atlanta, Georgia (Eric S. Tresh of counsel), for petitioner.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for Commissioner of Taxation and Finance, respondent.
Hodgson Russ LLP, Hackensack, New Jersey (Open Weaver Banks of counsel), for Broadband Tax Institute, amicus curiae.
The Business Council of New York State, Inc., Albany (Heather C. Mulligan of counsel), for The Business Council of New York State, Inc., amicus curiae.

Powers, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a franchise tax assessment imposed under Tax Law article 9-A.
Petitioner is an affiliated group of companies doing business in New York, as well as other states, by providing video, high-speed data and digital voice services to residential and commercial customers. For the 2012, 2013 and 2014 tax years, petitioner filed a combined franchise tax return as permitted by Tax Law § 211 (former [4]) to properly reflect their combined tax liability. In each of these reporting years, petitioner identified itself as a "qualified emerging technology company" and, therefore, paid a taxation rate lower than that which was normally applicable as authorized by Tax Law § 210 (former [1] [a] [vi]) for the 2012 and 2013 tax years and Tax Law § 210 (former [1] [a] [vii]) for the 2014 tax year.
Following an audit and conciliation conference, the Department of Taxation and Finance determined that petitioner was not a qualified emerging technology company because certain members of the combined group were not located in New York during the years at issue as statutorily required to meet the definition. As a result, a notice of deficiency in the amount of $7,805,767.54 was issued against petitioner, representing the difference between the applicable taxation rate and that paid by petitioner together with associated interest less certain payments and credits. Petitioner then sought redetermination with the Division of Tax Appeals. An Administrative Law Judge (hereinafter ALJ) conducted a hearing and, in December 2022, issued a decision which denied the petition and sustained the notice of determination. Petitioner filed a notice of exception and, following oral argument, respondent Tax Appeals Tribunal affirmed the ALJ's decision. Petitioner commenced this CPLR article 78 proceeding to challenge the Tribunal's determination.
As it is undisputed that certain members of the combined group were not located in New York during the relevant time, we are faced with the question of whether respondents were correct in their interpretation of the applicable statutory provisions to require every member of a combined group to independently meet the definition of a qualified emerging technology company for the combined group to receive the reduced taxation rate. "[A]n administrative agency's interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute" (Matter of Gruber [New York City Dept. of Personnel-Sweeney], 89 NY2d 225, 231 [1996] [internal quotation marks and citation omitted]). "Where the question presented is one of pure statutory interpretation, we consider the statutory language and legislative [*2]history without deference to the Tribunal's interpretation" (Matter of Schreiber v New York State Tax Appeals Trib., 222 AD3d 1303, 1305 [3d Dept 2023] [internal quotation marks, ellipsis and citations omitted]). On the other hand, "where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute" (Matter of Saratoga Economic Dev. Corp. v State of N.Y. Auths. Budget Off., 222 AD3d 1072, 1074 [3d Dept 2023] [internal quotation marks, brackets and citations omitted], lv denied 41 NY3d 910 [2024]; accord Matter of Gruber [New York City Dept. of Personnel-Sweeney], 89 NY2d at 231; see Matter of Gans v New York State Tax Appeals Trib., 194 AD3d 1209, 1210 [3d Dept 2021]). We are presently faced with the former and, thus, we must analyze the statutory language and legislative intent, without deference to the Division of Taxation's or the Tribunal's interpretations (see Matter of Purcell v New York State Tax Appeals Trib., 167 AD3d 1101, 1103 [3d Dept 2018], lv denied 33 NY3d 913 [2019], lv dismissed 33 NY3d 999 [2019]; Matter of Piccolo v New York State Tax Appeals Trib., 108 AD3d 107, 110 [3d Dept 2013]). Nonetheless, we agree with the agency's statutory interpretation.
Initially, "[a] state may require combined [tax] reporting when there is a unitary business, or a group of companies benefitting from functional integration, centralization of management, and economies of scale. New York employs combined reporting to avoid distortion of and more realistically portray the true income of closely related businesses[,] regardless of where they are geographically situated" (Matter of Disney Enters., Inc. v Tax Appeals Trib. of State of N.Y., 10 NY3d 392, 399 [2008] [internal quotation marks and citations omitted]; see Tax Law § 211 [former (4)]). Pursuant to Tax Law former § 210, franchise taxes due by business corporations are calculated based upon "the sum of (1) the highest of the amounts prescribed in [Tax Law § 210 (former [a], [b], [c] and [d])] and (2) the amount prescribed in [Tax Law § 210 (former [e])]" (Tax Law § 210 [former (1)]). During the relevant time, the appliable tax rate was 7.1% "of the taxpayer's entire net income base" (Tax Law § 210 [former (a)]).[FN1] However, that rate was reduced to 6.5% of the taxpayer's entire net income base for the 2012 and 2013 tax years and then 5.9% of the taxpayer's entire net income base for the 2014 tax year "for a taxpayer which is a qualified New York manufacturer" (Tax Law § 210 [former (1) (a) (vi), (vii)]). Relevantly, a taxpayer is "any corporation subject to tax under [Tax Law article 9-A]" (Tax Law § 208 [2]) and a taxpayer may be a "qualified New York manufacturer" in two separate ways. While it is uncontested that only the second definition [*3]of a "qualified New York manufacturer" applies to petitioner, the added context both provide is necessary here.
First, a qualified New York manufacturer is "a taxpayer which . . . is principally engaged in the production of goods by manufacturing, processing, assembling, refining, mining, extracting, farming, agriculture, horticulture, floriculture, viticulture or commercial fishing" (Tax Law former § 210 [former (1) (a) (vi)]). The Legislature further specified that a "combined group shall be considered a 'manufacturer' . . . only if the combined group . . . is principally engaged in the[se] activities" and, in connection, "[a] taxpayer or a combined group shall be 'principally engaged' in activities described above if, during the taxable year, more than [50%] of the gross receipts of the taxpayer or combined group, respectively, are derived from receipts from the sale of goods produced by such activities" (Tax Law § 210 [former (1) (a) (vi)]). Further, under that definition, the manufacturer must have property in New York and that property must be "principally used by the taxpayer in the production of goods by manufacturing, processing, assembling, refining, mining, extracting, farming, agriculture, horticulture, floriculture, viticulture or commercial fishing" (Tax Law § 210 [former (12) (b) (i) (A)]), "and either (I) the adjusted basis of such property for federal income tax purposes at the close of the taxable year is at least one million dollars or (II) all of its real and personal property is located in New York" (Tax Law § 210 [former (1) (a) (vi)]).
Second, a taxpayer may also be a qualified New York manufacturer if that taxpayer is "a qualified emerging technology company" as defined by Public Authorities Law § 3102-e (1) (c), "regardless of the [10] million-dollar limitation expressed [there]in" (Tax Law § 210 [former (1) (a) (vi)]). Pursuant to Public Authorities Law § 3102-e (1) (c), a qualified emerging technology company is, as is relevant here, "a company located in New York . . . whose primary products or services are classified as emerging technologies" (Public Authorities Law § 3102-e [1] [c]). This language was codified in 1998 as part of the New York State Emerging Industry Jobs Act, which stated that emerging technology industries "have a record of, or significant potential for, creating quality employment opportunities for [New York] citizens," but there are "significant barriers to the commercialization of scientific and technological discoveries by emerging technology firms" (L 1998, ch 56, part A, § 30). To combat these barriers, "remain competitive and to create future quality jobs for [New York] citizens," the Legislature declared its intent to incentivize "private investments in research and development and in emerging technology industries [in New York]" (L 1998, ch 56, part A, § 30).
"[T]he clearest indicator of legislative intent is the statutory text" and, therefore, "the starting point in any case of interpretation [*4]must always be the language itself, giving effect to the plain meaning thereof" (Matter of Pandolfi v Plainedge Union Free Sch. Dist., ___ AD3d ___, ___, 2025 NY Slip Op 06372, *1 [3d Dept 2025] [internal quotation marks and citations omitted]). In any event, "[c]ourts should also consider the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (Kokoska v Joe Tahan's Furniture Liquidation Ctrs., Inc., 243 AD3d 15, 20 [3d Dept 2025] [internal quotation marks and citations omitted]).
Tax Law § 210 (former [1] [a] [vi]) specifically delineated the criteria for a combined group to meet the first definition of qualified New York manufacturer. Namely, when the entire combined group (1) is principally engaged in the production of goods by manufacturing, processing, assembling, refining, mining, extracting, farming, agriculture, horticulture, floriculture, viticulture or commercial fishing; (2) has property principally used for that purpose in New York; and (3) the adjusted basis of such property is at least one million dollars or all of its real and personal property is located in New York. However, the Legislature failed to delineate a specific set of criteria for when to consider a combined group as a qualified New York manufacturer pursuant to the second definition. Though "[l]egislative inaction . . . is a weak reed upon which to lean in determining legislative intent" (People v Thomas, 33 NY3d 1, 12 n 9 [2019] [internal quotation marks and citations omitted]), the Legislature was not silent here. Rather, it intentionally made certain specifications in one scenario and not the other. "Courts cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the [L]egislature did not see fit to enact" (People v Corr, 42 NY3d 668, 673 [2024] [internal quotation marks, brackets and citation omitted]). Therefore, based upon the plain language of the statute, a combined group may only be a qualified New York manufacturer under the definition of a qualified emerging technology company if each taxpayer qualifies because, pursuant to the statute, the "taxpayer" is each corporation and not the combined group. Based upon the foregoing, we do not find petitioner's interpretation of the statute to be consistent with the statute's plain language.
Nor do we find petitioner's interpretation consistent with the intent of the New York State Emerging Industry Jobs Act, which sought to incentivize investment in the emerging technology industry in New York. Providing the lower taxation rate to companies that do not fit the specified criteria — by, among other things, failing to have some real property connection to New York — would not serve to incentivize this industry, allow New York to "remain competitive [or] to create future quality jobs for [New York] citizens" as the Legislature intended (L 1998, ch 56, part A, § 30). Thus[*5], each taxpayer of petitioner's combined group must have been located in New York and primarily have been involved in the production or servicing of emerging technologies to meet the definition of a qualified emerging technology company. Petitioner concedes this is not the case. Further, we do not find merit in petitioner's alternative argument that those taxpayers located in New York should be given the benefit of the lower taxation rate provided by Tax Law § 210 (former [1] [a] [vi]), while those not so located should be taxed at the usual rate, as this would effectively result in decombining the group and "distort the group's economic activity in New York" (Matter of Disney Enters., Inc. v Tax Appeals Trib. of State of New York, 40 AD3d 49, 53 [3d Dept 2007], affd 10 NY3d 392 [2008]).
Finally, petitioner contends that differing taxation rate provided by Tax Law § 210 (former [1] [a] [vi]) violates the dormant Commerce Clause. "[A] state tax on interstate commerce violates the dormant Commerce Clause unless it is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State" (Matter of International Bus. Machs. Corp. & Combined Affiliates v Tax Appeals Trib. of the State of N.Y., 214 AD3d 1125, 1127 [3d Dept 2023] [internal quotation marks and citations omitted], affd 42 NY3d 538 [2024], cert denied ___ US ___, 145 S Ct 1126 [2025]). "Legislative enactments carry an exceedingly strong presumption of constitutionality" (Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 210 AD3d 86, 92 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], affd 42 NY3d 538 [2024], cert denied ___ US ___, 145 S Ct 1125 [2025]); petitioner has not overcome that presumption. Although the statutory scheme may seem to favor New York companies at first blush, out-of-state companies may still benefit from the reduced tax rate if they demonstrate some real property connection to the state. Thus, petitioner has not met its "substantial burden of demonstrating that in any degree and in every conceivable application, the law suffers wholesale constitutional impairment" (Matter of Ciardullo v McDonnell, 241 AD3d 45, 54 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Disney Enters., Inc. v Tax Appeals Trib. of State of N.Y., 10 NY3d at 408-409; Matter of Walt Disney Co. & Consol. Subsidiaries v Tax Appeals Trib. of the State of N.Y., 210 AD3d at 92-93; cf. Matter of National Rest. Assn. v Commissioner of Labor, 141 AD3d 185, 193-194 [3d Dept 2016]).
Garry, P.J., Clark, Aarons and Lynch, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: Entire net income is defined to mean the "total net income from all sources, which shall be presumably the same as the entire taxable income" (Tax Law § 208 [9]).